IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

EOD
04/19/2005

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LARRY DALE MINTER and | § | Case No. 04-90068 |
| LOBEARARA LEE MINTER | § | |
| | § | |
| Debtors | § | Chapter 7 |

## **MEMORANDUM OF DECISION**

This matter is before the Court to consider the "United States Trustee's Motion to Dismiss for Substantial Abuse" (the "Motion") through which the Office of the United States Trustee ("UST") seeks a dismissal of the above-referenced case upon the assertion that the granting of a discharge to the Debtors, Larry and Lobearara Minter, would constitute a substantial abuse of the provisions of Chapter 7. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

*Background*

After obtaining his GED and attending trade school, Larry Minter, 54, has been a millwright for approximately thirty (30) years, working primarily on the road in temporary, large-scale retooling and power plant maintenance projects. His wife, Lobearara Minter, is a housewife. Mr. Minter's work as a millwright, which supplements

---

[1] This Court has jurisdiction to consider the motion pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b).

a Veterans Administration disability stipend, has provided significant income in the past but has always been seasonal because extensive maintenance projects are generally avoided in the summer. However, their household experienced an unusual drop in income beginning in 2002 when Mr. Minter's work became even more sporadic. He attributes this to decisions by companies to defer substantial maintenance projects in light of a tight economy and their election to use non-unionized personnel for any such available work.

After a substantial period of sporadic employment and a growing inability to timely meet all of his financial obligations, Mr. Minter attempted to solve his family's growing problem of meeting its bills each month. He sought consumer credit counseling and was advised that he needed to dedicate $1500/month toward satisfaction of credit card debts — a monthly sum which simply was not available . His own personal efforts to convince certain of the credit card issuers to lower or eliminate accruing fees also proved fruitless. Some of his ideas were not truly helpful. When he traded his 2002 Ford 1-ton dually truck with 75,000 miles and growing transmission problems for a 2004 Dodge 1-ton truck, he achieved his goal of lowering his monthly auto payment, but he also increased his debt by approximately $9,000. Finally, in November 2003, he sought bankruptcy advice and on January 28, 2004, he and his wife filed for relief under Chapter 7 of the Bankruptcy Code.

In their schedules, the Minters listed secured debts of $141,162.01 and unsecured

debts of $69,161.68, composed primarily of credit card and signature loan obligations. Their schedule of income shows net income of $3,768.93 and expenditures of $3,699.30, though Mr. Minter revealed that his post-petition employment activities have not consistently yielded a positive cash flow. Those projected expenditures included amounts dedicated to the Debtors' reaffirmation of debts on their homestead, his truck, a 1999 travel trailer which he uses as a residence on his remote job locations, two televisions and a four-wheeled vehicle.

After the case trustee's declaration of a "no-asset" estate and no action having been taken by the case trustee or by any affected creditor to prevent the award of a discharge to the Debtors, the UST filed the present motion, alleging that the granting of a discharge to the Minters would constitute a substantial abuse of the provisions of Chapter 7. The UST based its contention upon certain pre-petition purchases by the Debtors and upon allegations that Mr. Minter failed to disclose retirement contributions and certain aspects of fringe benefits arising from his employment.

*Discussion*

Section 707(b) was added to the Bankruptcy Code "in response to concerns that some debtors who could easily pay their creditors might resort to chapter 7 to avoid their obligations." 6 COLLIER ON BANKRUPTCY ¶ 707.04 at p. 707-16 (15th ed. rev. 2003). In order to prevent creditors from utilizing the threat of this dismissal remedy against consumer debtors for unfair advantage, the statute can only be invoked through the

-3-

motion of the United States Trustee or by the court itself.

Specifically, the statute provides in part that:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. . . .[2]

The Bankruptcy Code provides no guidance as to what conduct should trigger a finding of "substantial abuse" under §707(b). As the Fourth Circuit has noted, "[t]he ambiguity of the statutory language is no doubt a reflection of Congress's inability to agree on a definition of substantial abuse which would encompass [the] countervailing considerations in all situations." *Green v. Staples (In re Green)*, 934 F.2d 568, 571 (4th Cir. 1991). However, despite the fact that no particular process of evaluation has ever been endorsed by the United States Supreme Court or by the Fifth Circuit, decisions of other circuit courts of appeals have evolved from the earliest opinion endorsing a more

---

[2] The term "consumer debt" is defined by the Bankruptcy Code as a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. §101(8). In order for §707(b) to be applicable, the indebtedness of the debtor must be primarily consumer in nature. *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988) ["Even if the filing of the petition is in fact a substantial abuse of the bankruptcy procedure, a case may not be dismissed under this provision unless this prerequisite is satisfied."]. "The test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit." *Id*. There is no dispute in this case that the Debtors' debts are primarily consumer in nature.

restrictive "ability to pay" analysis[3] to subsequent decisions endorsing a broader "totality of the circumstances" review[4] which "demands a comprehensive review of the debtor's current and potential financial situation."[5] Under the totality test, which this Court has previously adopted, "substantial abuse can be predicated upon either a lack of honesty, or want of need," *In re Rathbun*, 309 B.R. 901, 904 (Bankr. N.D. Tex. 2004) and this Court has previously utilized a useful distillation of the various factors considered by courts into two general areas of inquiry: (1) whether the debtor has the financial ability to make significant payments to creditors from future income; and (2) whether the debtor has exhibited a lack of honesty in dealings with creditors. *In re Rubio*, 249 B.R. 689 (Bankr. N.D. Tex. 2000).

There is very little evidence to suggest that the Debtors in this case possess a financial capacity which belies their need for Chapter 7 relief and instead reflects an intent to evade the just repayment of debts to their creditors. While the amount of their debts renders them eligible for Chapter 13 relief, they have not been able to secure a stable source of income upon which to base any such effort for many months, notwithstanding Mr. Minter's travels to secure employment in the face of seasonal and sporadic opportunities. The Debtors' financial condition is accurately portrayed in their

---

[3] *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 914 (9th Cir. 1988).

[4] *See, e.g., Stewart v. U. S. Trustee (In re Stewart)*, 175 F.3d 796, 809 (10th Cir. 1999); *Green*, 934 F.2d at 572-73.

[5] *First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1, 5 (1st Cir. 1998).

schedules and there is nothing to suggest that their family budget is excessive or unreasonable. Other than questioning the fulfillment of the Debtors' reaffirmation decisions, which is discussed below, there are no excessive expenses which would warrant the denial of Chapter 7 relief.

The allegations of the motion are instead rooted in an alleged lack of honesty by the Debtors. While it is unchallenged that the Debtors filed their Chapter 7 petition as a direct result of the unavailability of employment for Mr. Minter, the UST perceives an abusive pattern of conduct by the Debtors which allegedly should preclude the availability of Chapter 7 relief to them.

First, the UST alleges that the Debtors were dishonest in the presentation of their schedules. It points to what it perceives to be an abnormal decrease of anticipated income on Schedule I, including an alleged attempt to conceal a retirement deduction on Schedule I which it contends altered the budget analysis. However, Schedule I constitutes a projection of anticipated income based upon current expectations and the evidence demonstrates that, notwithstanding Mr. Minter's concerted efforts to maintain employment in the post-petition period, his income has indeed been irregular and unpredictable. Nor does the Debtor's pay stub reveal any undisclosed retirement deduction.[6] The sums designated as "fringe benefits," including retirement deductions, are not actually withheld from the Debtor's pay, but rather are contributed by his employer for his benefit under the collective bargaining agreement with his union. The

---

[6] *See, e.g.*, Exhibit P-3.

pay stub is utilized to report those contributions but none are actually deducted from his gross income and none of them are required to be noted on Schedule I.

Secondly, the Debtors are accused of manipulating their tax refunds in order to disguise an additional $1,000. However, there is no evidence that anything was disguised. The Debtors' Schedule B disclosed an "estimated" tax refund of $5,000 for the 2003 tax year. It was eventually realized as a $6,000 refund once the tax return was actually processed in April 2004. Although the failure to administer this asset remains unexplained, it is clear that the Debtors fulfilled their obligation to disclose the existence of the asset along with a reasonable evaluation of its worth.

Third, the UST alleges that the Debtors made questionable purchases on the "eve of bankruptcy" which belies an honest intent deserving of the availability of a Chapter 7 discharge. However, there is little, if any, evidence of a pattern of reckless spending in anticipation of bankruptcy which this factor is intended to convey. It is true that the Debtor traded for a 2004 Dodge truck eight or nine months prior to filing but, while the action did increase the Debtors' indebtedness, it actually was intended by Mr. Minter to reduce his actual monthly auto payment and to reduce his anticipated monthly auto maintenance expenses.[7] Similarly, the Debtor bought a television from Conn's for his travel trailer which unfortunately did not fit the designated space. He therefore sold that television and bought a second unit five months prior to filing. A reasonable person

---

[7] The Debtors' failure to record the trade-in of his old vehicle as a transfer on question #10 of the Statement of Financial Affairs was unintentional and, in context, inconsequential to the search for substantial abuse.

-7-

could call that purchase improvident, perhaps even extravagant, but there is no evidence that the Debtor engaged in that purchase to abuse his creditors or the bankruptcy process. In fact, the Debtor has reaffirmed that obligation to pay every cent to that creditor and, while some isolated critics might advocate the denial of Chapter 7 relief to any debtor who makes imprudent financial decisions prior to filing, that is not the standard for substantial abuse intended by the Bankruptcy Code.

Finally, the UST suggests that abuse is reflected in the Debtors' reaffirmation of obligations to certain secured creditors for what the UST describes as "luxury goods." As stated above, the Debtors made some unwise purchases in the year prior to bankruptcy but there is no evidence that they were triggered by the expectation of filing bankruptcy or with any degree of intent to abuse the system. The testimony that the truck was purchased to produce an overall reduction of monthly expenses is credible. The 1999 travel trailer is where Mr. Minter lives when working at remote locations and it provides immediately accessible lodging at the job site at a cost significantly less than lodging costs available in nearby towns. The testimony that the trailer is only sparingly used by the Debtors for recreational purposes, as opposed to employment purposes, has not been refuted. The Debtors have admittedly proceeded to reaffirm certain debts owing to the Soltex Federal Credit Union which holds a lien upon the truck and travel trailer and whose unsecured signature loan proceeds were used to purchase the four-wheeler (which was eventually sold, with the knowledge of the credit union, and the proceeds used for monthly living expenses for the Debtors and his elderly mother). The UST argues that

such reaffirmations were unnecessary and are indicative of abuse. However, in the absence of an evidentiary foundation created by more significant criteria from which a comprehensive negative inference may be drawn, the reaffirmation of debt by a Chapter 7 debtor cannot be properly construed as an indication of substantial abuse. Otherwise, it creates an anomalous circumstance under which a debtor is penalized for utilizing rights clearly granted to him by the Code, which statutorily does not require court analysis or approval of such transactions when the debtor is represented by counsel, and is essentially punished for failing to seek Chapter 13 relief under which the debtor could subject such (non-homestead) secured debts to cramdown with impunity.

There is simply little, if any, indication that the granting of a discharge to the Debtors in this case would constitute a substantial abuse of Chapter 7. There has been no demonstration of any future financial stability which will be illegitimately shielded from the demands of creditors. Nor have the Debtors exhibited any lack of honesty in dealings with their trustee, their creditors, or the bankruptcy process in general. The filing was primarily due to sporadic employment. The Debtors do not live an extravagant lifestyle. In fact they often live apart in his effort to maintain employment. The record also suggests a significant effort by the Debtors to pay their creditors. Though certainly some of the financial decisions made by the Debtors as pressures increased upon them can be legitimately criticized, that would be true in virtually every Chapter 7 case. Notwithstanding an extensive analysis of the Debtors' pre-petition and post-petition transactions, there is little evidence to suggest that these Debtors are trying to "game the

system." Their actions, though at times misguided, have been consistent with their professed intent to pay their debts and the testimony offered on their behalf is credible. The motion to dismiss for substantial abuse is accordingly denied.[8]

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[9] pursuant to FED. R. CIV. P. 52, as incorporated into contested matters in bankruptcy cases by FED. R. BANKR. P. 7052 and 9014. A separate order has been entered which is consistent with this opinion.

Signed on 4/19/2005

_____
THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[8] It is hoped that this effort by the local office of the United States Trustee, which this Court has found to be diligent and effective, was not a product of some quota imposed by some higher administrative authority in order to fulfill some national statistical enforcement mandate. The system would be better served if the United States Trustee program would allow its experienced professionals at the local level to evaluate these cases and to use their judgment to bring only those motions which are actually necessary to prevent the substantial abuse of Chapter 7.

[9] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.